**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**RAISTONE PURCHASING LLC-SERIES**
**XXXVII,**                                              **22-cv-10221 (JGK)**
                        **Plaintiff,**

                                                         **MEMORANDUM OPINION**
        **- against -**                                  **AND ORDER**

**COMERCIALIZADORA DE PAPELES Y**
**CARTONES SURPAPEL S.A.,**
                        **Defendant.**
───────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Raistone Purchasing LLC-Series XXXVII

("Raistone"), brought this action against the defendant

Comercializadora de Papeles y Cartones Surpapel S.A.

("Comercializadora"), seeking to recover damages arising from

Comercializadora's purported breach of a supply chain financing

agreement it entered into with the plaintiff. Raistone now moves

for summary judgment on the issues of liability, damages, and

entitlement to attorney's fees. The plaintiff's motion for

summary judgment is **granted.**

                                 **I.**

        The following facts are taken from the parties' Local Rule

56.1 statements, counterstatements, and supporting papers and

are undisputed unless otherwise noted.[1]

───────────────────

[1] Unless otherwise noted, this Memorandum Opinion and Order omits
all alterations, omissions, emphasis, quotation marks, and
citations in quoted text.

Raistone, an assignee of Raistone Purchasing LLC—formerly known as SGSF Master Purchasing DE LLC ("SGSF"), is a company that provides supply chain financing. Rule 56.1 Statement ¶¶ 1, 5, ECF No. 31. Through its supply chain financing program, when a seller provides goods to a buyer, Raistone will issue a discounted payment to the seller in exchange for the seller's "receivable"—or its right to receive the full payment from the buyer. Id. ¶ 5. Later, the buyer will pay the full sale price directly to Raistone. Id. This arrangement allows sellers of goods to receive prompt payment and buyers of goods to receive those goods with longer payment terms than sellers may have been willing or able to provide. Id. ¶ 6.

Raistone facilitates its supply chain financing program through an online platform called "invoicXcel" ("the Platform"). Id. ¶ 7. Buyers and sellers can offer receivables on the Platform for Raistone to purchase. Id.[2] When Raistone decides to purchase a receivable, it issues payment directly to the seller and the Platform automatically generates an email to the seller, confirming the purchase of the receivable, the discounted payment issued, and the specific invoice or receivable for which payment has been issued. Id. ¶ 8.

---

[2] Comercializadora disputes the contention that buyers could offer receivables for sale on the Platform pursuant to the express terms of the RPA. See 56.1 Counterstatement ¶ 7, ECF No. 39.

In June 2020, Jason Rosenthal ("Rosenthal"), the then-president and principal of Barnett Corporation ("Barnett"), contacted Raistone, representing that Barnett sold paper and lumber-related products and was interested in arranging a supply chain financing program through Raistone. Id. ¶ 9. Subsequently, Raistone conducted due diligence on Barnett. Id. ¶ 10. In response to due diligence requests, Rosenthal provided Raistone with a list of Barnett's purported vendors and suppliers. Id. ¶ 11; McAlpine Decl., Ex. B-1, ECF No. 33. One of these suppliers was a company listed as "Surpapelcorp." See Rule 56.1 Statement ¶ 12; McAlpine Decl., Ex. B-1.

Raistone contacted Surpapelcorp's listed contact, Karen Grey ("Grey"), to provide her with information about the supply chain financing for Barnett and to propose a Receivables Purchase Agreement ("RPA"). Rule 56.1 Statement ¶¶ 13–14.[3] In turn, Grey provided a copy of the proposed RPA, signed by Comercializadora's General Manager, Jose Anuar Millan Abadia ("Millan"), on behalf of Comercializadora. Id. ¶ 18. Grey also

---

[3] Karen Grey did not work for Comercializadora directly, and instead worked for Procarsa, a company owned by Comercializadora that manufactures and sells cardboard products. Porter Decl., Ex. C ("Grey Deposition") at 14:15-16:1, ECF No. 32; Porter Decl., Ex. D. ("Patino Deposition") at 33:6-9, 36:11-13. Grey was a secretary who did not have any responsibility and reported to Gustavo Andres Patino Ocampo, a consultant who managed Comercializadora's supply chain financing program. See Patino Deposition at 43:16-44:15.

provided Comercializadora's incorporation documents and bank account information for use in connection with the supply chain financing program. Id.

Throughout this process, Comercializadora did not disclose its somewhat complex ownership structure. See id. ¶ 99; Patino Deposition at 41:21-43:20. Comercializadora is not a manufacturer of paper-related products. Rule 56.1 Statement ¶ 93; Porter Decl., Ex. B ("Millan Deposition") at 26:17-27:16. Instead, it is a holding company that "doesn't buy or sell any products." Rule 56.1 Statement ¶ 93; Millan Deposition at 27:7-12. International Package Systems Holdings Cooperatief ("Cooperatief")—also a holding company that generates no income—owns 67.5% of Comercializadora. Rule 56.1 Statement ¶ 86. Cooperatief is, in turn, 100% owned by International Package Systems LLC ("IPS LLC")—also a holding company. Id. ¶ 87. Ownership of IPS LLC is split fifty-fifty. Id. ¶ 88; Patino Deposition at 27:20-31:20. Half is owned by four trusts established by Gustavo Andres Patino Ocampo ("Patino"), a consultant who managed Comercializadora's supply chain financing program, to benefit each of his four children. See Patino Deposition at 27:20-31:20. The other 50% of IPS LLC is owned by three trusts, established by Rosenthal, the then-president and principal of Barnett to benefit his two children and his wife.

4

See id.[4] In addition to managing Comercializadora's participation in the supply chain financing program in 2020 and 2021, Patino testified that he worked for Barnett from 1999 until 2018, consulted for Barnett until the end of 2021, and used a Barnett email address until 2021. Rule 56.1 Statement ¶ 95; Patino Deposition at 48:25-52:4.

Ultimately, the RPA with Comercializadora was executed, with an effective date of September 18, 2020. Rule 56.1 Statement ¶ 19. It identified Comercializadora as the "Seller" and SGSF and its successors—in this case, Raistone—as the "Purchaser." Id. ¶¶ 25-26; McAlpine Decl., Ex. F ("RPA") at 1. The RPA provides that "Receivables" are "all indebtedness and other payment obligations owing to Seller by an Account Debtor relating to or arising under a particular Underlying Transaction." RPA Ex. A. The RPA defines the "Underlying Transaction" as "[t]he provision of goods or services by Seller to Account Debtors" and the "Account Debtor" as Barnett. See id.

The RPA generally provides that:

> Purchaser may receive from Seller a request to purchase from Seller certain Eligible Receivables set out in such request (each, a "Request"). The Request shall be submitted via the Platform or in such other manner as Purchaser shall agree, and it shall be accompanied by such additional supporting documentation as Purchaser reasonably

---

[4] The parties agree to these facts but dispute their implications for the question of common control of the two companies.

> requires. Purchaser, in its sole discretion,
> may choose to accept or reject a Request.

Id. § 1(a). Eligible Receivables purchased in compliance with

this process are known as "Purchased Receivables." See id.

Eligible Receivables are "Receivable[s] generated by Seller

in the ordinary course of its business in respect of an

Underlying Transaction, payable by an Approved Account Debtor

. . . which satisf[y] each of the relevant representations and

warranties set forth in Section 2 herein." Id. Ex. A. The RPA

provides that Eligible Receivables:

> (ii) [Are] payable in an amount not less than
> [their] Net Amount by the Account Debtor
> identified in the applicable Request;
>
> (iii) [Are] based on an actual and bona fide
> rendering of services or sale of goods by
> Seller in the ordinary course of its business
> that have been fully rendered or delivered as
> of the Purchase Date relating thereto . . . ;
>
> (vii) [Are] sold hereunder in good faith and
> without actual intent to hinder, delay or
> defraud present or future creditors of
> Purchaser or Seller; . . .
>
> (ix) [Are] not payable by any shareholder,
> director, partner or agent of Seller, or any
> Person controlling, controlled by or under
> common control with, Seller; . . .
>
> (xi) [Are] in full force and effect and
> constitute[] the valid and binding obligation
> of the related Account Debtor, enforceable in
> accordance with its terms.

Id.

Section 2 of the RPA details Comercializadora's representations and warranties. These include, in relevant part,

> (i) Each of the Purchased Receivables is an Eligible Receivable and is in full force and effect and is the valid and binding obligation of the related Account Debtor, enforceable in accordance with its terms, and constitutes such Account Debtor's legal, valid and binding obligation to pay to Seller and its assigns in the future the full amount of such Purchased Receivable. . . .

> (ii) Each Purchased Receivable is a bona fide payment obligation of an Account Debtor due in the Net Amount thereof on the Due Date for such Purchased Receivable . . . .

> (iii) The Purchase Price for each Purchased Receivable represents the fair value therefor.

> (iv) Seller is the legal and beneficial owner of each Purchased Receivable. . . .

> (x) Seller is in compliance in all material respects with the agreements and sale terms relating to the Purchased Receivables . . . .

> (xiv) No information at any time furnished in writing (including in electronic form) by Seller . . . to Purchaser for purposes of or in connection with this Agreement or any other transaction contemplated hereby . . . (i) is, or will be, inaccurate in any material respect as of the date it was furnished or (except as otherwise disclosed to Purchaser in writing at or prior to such time) as of the date as of which such information is dated or certified, or (ii) contained or will contain any material misstatement of fact or omitted or will omit to state any material fact necessary to make such information not materially misleading.

Id. § 2(a).

Pursuant to the RPA, in the case of an "Event of Repurchase," the Seller—namely, Comercializadora—must repurchase any outstanding receivables previously purchased by Raistone, within two days of a demand, at the full rate owed by Barnett—the Account Debtor. Id. § 5(a)(x). An Event of Repurchase occurs under two circumstances: if (1) "any representation or warranty by Seller hereunder with respect to any of the Purchased Receivables is incorrect when made," or if (2) "a . . . Dispute occurs with respect to any Purchased Receivable." Id. §§ 5(a)(i)-(ii). As relevant here, "[i]n the absence of an Insolvency Event with respect to the related Account Debtor, any Purchased Receivables 30 days or more past their Due Date are deemed to have a Dispute and to be subject to [Repurchase]." Id. Ex. A. Finally, the RPA provides that interest accrues on all amounts owed by Comercializadora upon an Event of Repurchase "at a rate equal to the Discount Rate," i.e., the percentage discount Raistone applied upon its initial purchase of the receivable. See id. § 5(a)(x).

The RPA also includes an indemnification provision and a provision for expenses and fees. The indemnification clause provides, in relevant part, that:

> Seller hereby agrees to indemnify Purchaser (together with its officers, directors, representatives, shareholders, counsel, employees and lenders, each, an "Indemnified Party") and hold them harmless, from and

8

> against any and all claims, losses, damages,
> liabilities, costs and expenses (including,
> without limitation, reasonable attorneys'
> fees) (all of the foregoing being collectively
> referred to as "Indemnified Amounts") arising
> out of or resulting from the transactions
> contemplated by this Agreement and any
> documents related hereto . . . .

Id. § 5(b). Meanwhile, the expenses and fees provision requires
that "Seller shall reimburse Purchaser for all reasonable costs
(including fees and expenses of counsel) in connection with any
enforcement of this Agreement as a result of any breach or
default by Seller . . . of its obligations hereunder." Id. § 8.

Separate from the RPA, Raistone entered into an agreement
with Barnett, called the "Supply Chain Finance Customer
Agreement" ("SCFC Agreement"), dated September 17, 2020. Rule
56.1 Statement ¶ 21; McAlpine Decl., Ex. G ("SCFC Agreement").
That agreement authorized Barnett to post invoices on the
Platform and obligated Barnett to issue full payment to Raistone
for each receivable Raistone opted to purchase. Rule 56.1
Statement ¶ 22; SCFC Agreement at Recitals (B) and § 3. However,
Comercializadora was not a party to the SCFC Agreement and never
received a copy of the contract. See 56.1 Counterstatement ¶ 21;
Re Decl., Ex. 4 ("McAlpine Deposition") at 61:4-18, ECF No 40.

After Barnett and Comercializadora received access to the
Raistone Platform, Barnett began to post invoices for purported
Comercializadora receivables and Raistone began to purchase

these receivables from Comercializadora. Rule 56.1 Statement ¶¶
46-47, 52. All the receivables at issue in this case were
initially posted on the Platform by Barnett, not
Comercializadora. See McAlpine Deposition at 51:24-52:6.

Whenever Raistone purchased a Receivable posted by Barnett,
Raistone would wire the money to Comercializadora's bank
account, and the Platform would send an email to
Comercializadora memorializing the purchase and specifying the
receivable in question. Rule 56.1 Statement ¶ 48, 52. Grey
received these emails and forwarded each email to Patino, at
Patino's direction. Id. ¶¶ 50-51; Grey Deposition at 94:21-
95:19, 108:14-110:15. Comercializadora never disputed the
emails, contested the payments, or returned the money to
Raistone. Rule 56.1 Statement ¶ 55. In fact, Patino testified
that whenever he received an email from the Platform, he
forwarded that email to Rosenthal and Rosenthal would direct him
to send the money to a Barnett affiliate. Id. ¶¶ 103-04; Patino
Deposition at 94:24-101:4.

For several months, Barnett paid Raistone pursuant to the
SCFC Agreement. Rule 56.1 Statement ¶ 56. However, in May and
June of 2021, Barnett failed to pay Raistone the invoice amount
by the due dates set forth in the SCFC Agreement. Id. ¶ 57. On
July 2, 2021, Barnett executed a Promissory Note, acknowledging
its debt to Raistone and establishing a repayment schedule, but

Barnett later defaulted on that payment schedule. Id. ¶ 58;
McAlpine Decl., Ex. U. Subsequently, Raistone notified
Comercializadora of the occurrence of an "Event of Repurchase"
under the RPA and demanded that Comercializadora repurchase the
outstanding receivables. Rule 56.1 Statement ¶ 59.
Comercializadora failed to repurchase those receivables. Id.

On October 18, 2021, Raistone sent Comercializadora a
"Notice of Default—Reservation of Rights and Demand for
Payment." Id. ¶ 66; McAlpine Decl., Ex. X. This notice listed
all fifteen outstanding receivables and stated that the RPA
obligated Comercializadora to repurchase all outstanding
receivables for a price of $17,167,490.64. McAlpine Decl., Ex.
X. Raistone subsequently entered into a Forbearance Agreement
with Barnett, wherein Raistone agreed not to bring suit against
Barnett provided that Barnett made regular installment payments
on its debt to Raistone. See Rule 56.1 Statement ¶ 72; McAlpine
Decl., Ex. Y. Barnett made regular payments between December 10,
2021, and May 27, 2022, before ceasing to pay. See Rule 56.1
Statement ¶ 73. Those payments reduce any principal owed from
$17,167,490.64 to $13,317,490.14. See id. ¶ 78.[5]

---

[5] The RPA provides that repurchase amounts owed will accrue
interest until repaid in full, "at a rate equal to the Discount
Rate." Rule 56.1 Statement ¶ 79. As of July 30, 2024, interest
brought the total amount purportedly owed to $17,691,574.42. Id.
¶ 84.

On December 1, 2022, Raistone filed this action against
Comercializadora, asserting breach of contract and contractual
indemnification claims. See ECF No. 1. Raistone now moves for
summary judgment on its claims. See ECF No. 29.

**II.**

The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322—23 (1986); Gallo v. Prudential Residential Servs.
Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial
court's task at the summary judgment motion stage of the
litigation is carefully limited to discerning whether there are
any genuine issues of material fact to be tried, not to deciding
them. Its duty, in short, is confined at this point to issue-
finding; it does not extend to issue-resolution." Gallo, 22 F.3d
at 1224. However, "disputed legal questions . . . present
nothing for trial and are appropriately resolved on a motion for
summary judgment." Flair Broad. Corp. v. Powers, 733 F. Supp.
179, 184 (S.D.N.Y. 1990).

The moving party bears the initial burden of "informing the
district court of the basis for its motion" and identifying the
materials in the record that "it believes demonstrate the

absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the movant meets that burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis omitted). At the summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See id. The substantive law governing the case will identify those facts that are material and, "[o]nly dispute[] over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

### A.

Raistone first moves for summary judgment on the issue of liability, asserting that Comercializadora breached the RPA. The RPA is governed by the law of the state of New York. See RPA § 9. Under New York law, the elements of a breach of contract claim are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168,

177 (2d Cir. 2004); see also Harsco Corp. v. Segui, 91 F.3d 337,
348 (2d Cir. 1996).

In this case, Raistone has established the existence of a
valid agreement. The RPA was signed by Comercializadora's
General Manager, and neither party disputes its validity.
Raistone has also established that it adequately performed its
duties and obligations under the contract by making its Platform
available for supply chain financing, purchasing receivables,
and sending Comercializadora the discounted payments for those
receivables. Accordingly, Raistone has established the second
element of its breach of contract claim.

Moreover, the undisputed facts show that Comercializadora
breached its contractual obligations in several respects,
thereby satisfying the third element of its claim. Raistone
contends that Comercializadora breached the RPA in three
respects. First, Raistone argues that because Comercializadora
admitted that it was a holding company that never sold paper to
Barnett, no Eligible Receivables existed, and the bulk of
Comercializadora's representations and warranties were therefore
false. Second, Raistone contends that Comercializadora and
Barnett were under common control, thereby violating another of
Comercializadora's representations and warranties. Third,
Raistone argues that the dispute over payment constituted an
Event of Repurchase and Comercializadora breached its

14

obligations by failing to repurchase all outstanding receivables within two days of Raistone's demand.

Undisputed facts support at least two of these theories of breach. First, because Comercializadora is a holding company that does not manufacture anything and did not sell anything to Barnett, the purported receivables were not "generated by [Comercializadora] in the ordinary course of its business in respect of an Underlying Transaction, payable by an approved Account Debtor." See RPA Ex. A. Accordingly, the purported receivables were not Eligible Receivables, rendering the bulk of Comercializadora's representations and warranties false when made. For example, Comercializadora represented that "[e]ach Purchased Receivable is a bona fide payment obligation of an Account Debtor," and that "Seller is the legal and beneficial owner of each Purchased Receivable . . . ." Id. §§ 2(a)(ii), 2(a)(iv). Raistone correctly observes that neither of these representations could have been true at the time they were made because Barnett never sold goods to Comercializadora.

Additionally, Comercializadora breached its obligations under the RPA by failing to repurchase the outstanding receivables within two days of receiving Raistone's demand. Events of Repurchase occur under two circumstances. First, a breach of any representation or warranty by the Seller gives rise to an Event of Repurchase. See id. § 5(a)(i). Second, any

Dispute with respect to any Purchased Receivable constitutes an
Event of Repurchase. See id. § 5(a)(ii). Comercializadora's
breach of its representations and warranties under the RPA, as
described above, constituted an Event of Repurchase, requiring
Comercializadora to repurchase the outstanding receivables
within two days. See id. § 5(a)(x). Moreover, in addition to the
fact that Comercializadora breached the RPA in other respects, a
Dispute occurred when Barnett failed to pay Raistone the full
value of the outstanding receivables within thirty days.[6]
Accordingly, Comercializadora breached its obligations under the
RPA when it failed to repurchase the outstanding receivables.

Finally, having concluded that Comercializadora breached
the RPA by representing that Eligible Receivables existed when
they did not and by failing to repurchase the outstanding
receivables, it is unnecessary to consider whether
Comercializadora's ownership structure violated its
representation that any Eligible Receivables were "not payable
by any shareholder, director, partner or agent of Seller, or any
Person controlling, controlled by or under common control with,
Seller." Id. Ex. A. IPS LLC owns 67.5% of Comercializadora.

---

[6] If an Account Debtor experiences an Insolvency Event, delayed
payment does not constitute a Dispute within the meaning of the
RPA. See RPA Ex. A. However, Comercializadora does not contend
that Barnett was experiencing an Insolvency Event at the time it
failed to pay Raistone.

Fifty percent of IPS LLC is owned by trusts established by Rosenthal—the principal of Barnett—to benefit his family. The RPA does not define "common control." It is not immediately clear whether 50% ownership by trusts originally established by Rosenthal—but potentially not managed or controlled by him—constitutes "common control" within the meaning of the RPA. See Patino Deposition at 30:3-9.

Comercializadora asserts one defense to Raistone's breach of contract claim. Comercializadora contends that the RPA authorized Comercializadora alone to list Eligible Receivables on the Platform, not Barnett. Because the receivables at issue in this case were posted to the Raistone Platform by Barnett, the defendant argues that the receivables were not "Purchased Receivables" and Comercializadora is not liable for breach of contract. In support of this argument, the defendant relies on language in the RPA which provides that:

> From time to time . . . [Raistone] may receive
> from [Comercializadora] a request to purchase
> from [Comercializadora] certain Eligible
> Receivables set out in such request (each, a
> "Request"). The Request shall be submitted via
> the Platform or in such other manner as
> [Raistone] shall agree, and it shall be
> accompanied by such additional supporting

> documentation as [Raistone] reasonably
> requires.

RPA § 1(a). Comercializadora also notes that the RPA does not provide explicitly that a request can be submitted on Raistone's Platform by an entity other than Comercializadora.

Comercializadora's argument fails because, pursuant to the RPA language, Raistone could plainly agree to an alternative method for posting Eligible Receivables on the Platform. The RPA provides that requests "shall be submitted via the Platform or in such other manner as [Raistone] shall agree." See id. (emphasis added). Raistone could, and apparently did, consent to posting on the Platform by Barnett. It is undisputed that Raistone then paid Comercializadora for the receivables. See Rule 56.1 Statement ¶ 52. Moreover, the automated Raistone Platform emails put Comercializadora on notice that Barnett had posted invoices for Eligible Receivables on the platform and that Raistone had purchased the receivables. If Comercializadora did not intend to offer the contested receivables for sale, it could have objected and returned the money to Raistone, but it did not. Accordingly, Comercializadora's single asserted defense is unavailing, and Raistone has established that Comercializadora breached its obligations under the RPA.

Raistone has also established the final element of a breach of contract claim—damages. Under the RPA, Raistone is entitled

to repurchase of the contested receivables as well as interest at the Discount Rate. Accordingly, Raistone's motion for summary judgment as to liability is **granted.**

### B.

Raistone next moves for summary judgment on the issue of the amount of the damages award. The facts governing this amount are not in dispute and summary judgment is therefore appropriate. The Default Notice provides the repurchase price for each of the fifteen Outstanding receivables less any forbearance payments Barnett made prior to its default to reach a principal repurchase price of $13,317,490.14. <u>See</u> Rule 56.1 Statement ¶ 78.[7] Moreover, the RPA provides that Comercializadora's repurchase obligations will accrue interest until paid in full at a rate equal to the Discount Rate. <u>Id.</u> ¶ 79; RPA § 5(a)(x). No issue of material fact exists with respect to these calculations and the plaintiff is entitled to summary judgment on the amount of damages.

The plaintiff should submit, within twenty-one (21) days of this Memorandum Opinion and Order, a report regarding the calculation of accrued interest. The report should include the <u>per diem</u> prejudgment interest amount that will accrue from the

---

[7] Although Comercializadora disputes this fact, it appears to dispute the issue of liability, not the calculation of the damages. <u>See</u> 56.1 Counterstatement ¶ 78.

date the report is submitted until the date that judgment is entered in this case.

## C.

Raistone also contends that it is entitled to summary judgment as to liability on its contractual indemnification claim for losses, costs, and attorney's fees. The parties primarily dispute whether the RPA's indemnity provision entitles the plaintiff to attorney's fees.

"It is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002). Accordingly, "when a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend." Id. (quoting Hooper Assocs. v. AGS Computs., Inc., 548 N.E.2d 903, 905 (N.Y. 1989)).

In New York, "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." Hooper, 548 N.E.2d at 904. However, "in the context of private agreements to avoid the Rule," courts must determine that the agreement's indemnity language "contain[s] unmistakably clear language of the parties' intent to encompass [direct actions between the parties to the contract

20

in addition to actions against third parties]." Sage Sys., Inc.
v. Liss, 198 N.E.3d 768, 770 (N.Y. 2022). Otherwise, broad
indemnification provisions only cover attorney's fees in
disputes with third parties.

For example, in Hooper, a plaintiff successfully sued a
defendant for breach of contract and sought attorney's fees
pursuant to an indemnity clause that provided that the defendant
would pay for the plaintiff's reasonable attorney's fees. 548
N.E.2d at 903. The court held that the agreement contained no
language "clearly permitting plaintiff to recover from defendant
the attorney's fees incurred in a suit against [the] defendant."
Id. at 905; see also Best Brands Consumer Prods., Inc. v.
Versace 19.69 Abbigliamento Sportivo S.R.L., No. 07-cv-4593,
2023 WL 4348354, at *3 ("To presume that broadly worded
indemnifications provisions by their nature are intended to
cover attorney's fees in direct party actions, would be to
deviate from New York's exacting standard that the agreement
must contain unmistakably clear language of the parties' intent
to encompass such actions").

The language in the RPA's indemnity clause is not
unmistakably clear. See RPA § 5(b). Instead, the RPA indemnity
clause's language generally requires Comercializadora to pay the
plaintiff's reasonable attorney's fees—much like the indemnity
provision in Hooper, which the New York Court of Appeals found

21

did not clearly permit the plaintiff to recover attorney's fees from the defendant in a direct suit against the defendant. <u>See</u> 548 N.E.2d at 905. Accordingly, section five of the RPA should not be construed to allow Raistone to recover attorney's fees from Comercializadora in this action.

However, Raistone also points to section eight of the RPA which provides that "Seller shall reimburse Purchaser for all reasonable costs (including fees and expenses of counsel) in connection with any enforcement of this Agreement as a result of any breach or default by Seller." RPA § 8. Unlike the indemnity clause, this provision contains unmistakably clear language encompassing suits brought by the plaintiff against the defendant under the contract. Accordingly, no question of fact remains for the jury and the plaintiff is entitled to summary judgment on the issue of attorney's fees. Indeed, at the argument of the current motion, defense counsel conceded that if there was a breach of contract—which the defendant disputes—the plaintiff would be entitled to recovery of attorney's fees for pursuing the current action.

The Second Circuit Court of Appeals has indicated that once there has been a determination of liability for attorney's fees, "the judge is to determine a reasonable amount of fees," except in cases of "contract[s] for legal services between a client and a lawyer." <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313

(2d Cir. 1993). Because this case does not involve a dispute
over a contract for legal services, the Court will determine the
amount of reasonable attorney's fees. Within twenty-one (21)
days of this Memorandum Opinion and Order, the parties should
either submit: (1) a stipulation outlining the agreed-upon
plaintiff's attorney's fees and costs that were incurred in
litigating this action, including documents reflecting the hours
spent on the matter by the plaintiff's attorneys and the billing
rates and experience level of those attorneys; or (2) a proposed
schedule for the submission of declarations and briefing on the
issue of the amount of attorney's fees and costs recoverable by
the plaintiff.

### CONCLUSION

The Court has considered all the parties' arguments. To the
extent not specifically addressed, those arguments are either
moot or without merit. For the foregoing reasons, the
plaintiff's motion for summary judgment is **granted.** The
plaintiff is directed to provide the Court with a calculation of
per diem prejudgment interest within twenty-one days of this
Memorandum Opinion and Order. Also within twenty-one days of
this Memorandum Opinion and Order, the parties are directed to
provide either a stipulation as to the amount of the plaintiff's
recoverable attorney's fees and costs or a proposed briefing

23

schedule on that issue. The Clerk is respectfully directed to close ECF No. 29.

**SO ORDERED.**
Dated:    New York, New York
          February 3, 2025

                                          John G. Koeltl
                                   United States District Judge